Peter J. Babos, Esq. (SBN134171)
**LAW OFFICES OF PETER J. BABOS**
3731 Wilshire Blvd., Ste. 940
Los Angeles, CA 90010
Tel.:  (310) 248-4822
Fax.:  (310) 388-5507

Attorneys for Defendants and Cross-Complainants,
SCOTT STANDER,
THE STANDER GROUP, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| **BRITISH BROADCASTING CORPORATION, BBC WORLDWIDE LTD., DWTS PRODUCTIONS, LLC,**<br><br>　　　　Plaintiffs,<br><br>v.<br><br>**SCOTT STANDER, SCOTT STANDER & ASSOCIATES, INC., THE STANDER GROUP, INC.**<br><br>　　　　Defendants.<br>_____<br>**SCOTT STANDER, THE STANDER GROUP, INC.**<br><br>　　　　Cross-Complainants,<br><br>v.<br><br>**BRITISH BROADCASTING CORPORATION, BBC WORLDWIDE LTD., DWTS PRODUCTIONS, LLC,**<br><br>　　　　Counter-Defendants. | **Case No. 2:14-CV-8047 FMO(RZx)**<br><br>**SECOND AMENDED COUNTER CLAIM BY DEFENDANTS SCOTT STANDER AND THE STANDER GROUP, INC. TO PLAINTIFFS' FIRST AMENDED COMPLAINT** |

---

**DEFENDANTS' SECOND AMENDED COUNTER CLAIM TO FIRST AMENDED COMPLAINT**

- 1 -

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

COME NOW Defendants and Counter-Complainants SCOTT STANDER, an individual, and THE STANDER GROUP, INC., a California corporation (hereafter "Stander & Group"), who hereby file their First Amended Counter-Claim against Counter-Defendants (hereafter "The BBC Group"), and each of them, as follows:

## PARTIES

1. Counter-Claimant Scott Stander ("Stander") is an individual residing in the County of Los Angeles, State of California.

2. Counter-Claimant The Stander Group, Inc. ("TSG") is a duly licensed California corporation existing under and by virtue of the laws of the State of California, with its principal place of business in the County of Los Angeles, State of California.

3. Counter-Defendant British Broadcasting Corporation is believed to be a foreign corporation licensed to be doing business in the County of Los Angeles, State of California.

4. Counter-Defendant BBC Worldwide Ltd., is believed to be a foreign limited liability company, licensed to be doing business in the County of Los Angeles, State of California.

6. Counter-Defendant DWTS Productions, LLC is believed to be a California limited liability company, with its principal place of business in the County of Los Angeles, State of California.

///
///
///

LAW OFFICES OF PETER J. BABOS
3731 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(310) 248-4822

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. Section 1121 and 28 U.S.C. Sections 1331 and 1338.  This Court has supplemental jurisdiction over the California claims alleged herein under 28 U.S.C. Section 1367.

8.  The BBC Group has their principal place of business and is doing business in this judicial district, and they are subject to personal jurisdiction in this district.  A substantial portion of the events giving rise to this action occurred in this district.  Personal jurisdiction and venue are therefore proper under 28 U.S.C. Section 1391.

## FACTUAL ALLEGATIONS

9.  Stander & Group own, produce and promote a live theatrical show called "Ballroom With a Twist" ("BWAT") which is performed in numerous venues throughout the United States.

10.  The BWAT shows incorporate dance and song excerpts, and uses past and present dance and singing performers from the television shows "So You Think You Can Dance", "Dancing With The Stars", and "American Idol."  BWAT has been in production and performing live shows over the past 6-7 years.

11.  The BBC Group has known all along of the BWAT shows since BWAT's inception.  The BBC Group has also known all along that several of the dancers that performed in the DWTS television show were performing in the live BWAT shows.

12.  TSG has written contracts with all of their performers, including dancers from DWTS, which include, but are not limited to, Valentin Chmerkovskiy, Peta Murgatroyd, Sharna Burgess, Jenna Johnson, and Emma Slater (the "BWAT Dancers").

13. These contracts were in full force and effect during the past year, and, in particular, were in place for an upcoming 20 city winter tour ("BWAT Winter Tour") to be performed during the months of January and February of 2015.

14. The subject contracts were voluntarily entered into by the BWAT Dancers with no restrictions as to their ability to perform, or any scheduling conflicts with DWTS. Stander & Group knew of no objection by The BBC Group and were reasonably led to believe that no consent or approval was needed from The BBC Group. The BWAT Dancers knew and represented to Stander & Group that the dates of the BWAT Winter Tour were in no conflict with any DWTS schedule or commitments.

15. At no time whatsoever was Stander & Group made aware of any contracts, and any terms or conditions stated therein, that the BWAT Dancers had, or may have had, with The BBC Group. The BWAT Dancers represented to Stander & Group that there was no objection or consent required by The BBC Group in order for them to contract with Stander & Group and perform in the BWAT 2015 Winter Tour.

16. At all times herein, The BBC Group knew of the upcoming BWAT 2015 Winter Tour and influenced and induced the BWAT Dancers to breach their respective contracts with Stander & Group, and further instructed them that they could not perform in the BWAT 2015 Winter Tour which they had already contracted for and were obligated to perform in.

17. Stander & Group are informed and believe, and based thereon allege, that at all material times herein The BBC Group had plans to produce a similar live dance show and tour during January and February of 2015 (hereafter the "DWTS Tour"), the same time period of the BWAT Winter Tour. The BBC Group further wanted the headline dancers that had already contracted with the BWAT Tour, and in particular, Valentin Chmerkovskiy, Peta Murgatroyd, Sharna Burgess, Jenna Johnson, and Emma Slater, to perform in its winter tour shows. These dancers had been performing in the 2014 television shows of DWTS, and had advanced during the season becoming very

popular with the audience and obvious choices for an upcoming live DWTS Tour that The BBC Group had been planning, but had not yet been formerly announced.

18. As a result of The BBC Group's wrongful actions herein, which were designed to further their own self-interest and contemplated live winter tour shows, TSG has been denied the full benefit of its contracts with each of the BWAT Dancers, including, but not limited to, all of the BWAT Dancers being unavailable to fulfill their contractual obligation to perform in the upcoming BWAT Winter Tour.

19. The BBC Group's actions were done knowingly and intentionally, and with oppression, fraud, or malice, thus warranting an award of punitive and exemplary damages.

20. Counter-complainants are further informed and believe, and based thereon allege, that at all times herein mentioned, Counter-defendants, and each of them, were the agents of each of their co-counter-defendants, and in doing the things herein alleged, each was acting within the scope of their authority as such agent and with the permission and consent of said co-counter-defendants, and were all somehow and in some manner responsible for the damages suffered by Counter-Claimants herein.

## FIRST COUNTER-CLAIM FOR RELIEF

(Intentional Interference with Contractual Relations)

21. Stander & Group hereby repeat and reallege each and every allegation contained in the above paragraphs as though set forth in full hereat.

22. At all times material hereto, Stander & Group and each of the BWAT Dancers entered into a written performance agreement for the BWAT Dancers to perform in the upcoming BWAT Winter Tour in January and February of 2015. Stander Group and the BWAT Dancers, in addition to other DWTS dancers, have been under contract over the past several years for live BWAT dance shows in which the dancers were to dance and perform in various live shows and, in particular, winter and summer tours.

23. These written performance agreements were in full force and effect during the relevant times stated herein.

24. At all times material hereto, The BBC Group knew of such written performance agreements between the TSG and the BWAT Dancers, but nevertheless willfully intended to disrupt, and did disrupt, the BWAT Dancers' contractual obligations with TSG by, among other things, persuading them to breach their respective contracts with TSG, forbidding them to perform in any future BWAT theatrical productions, and otherwise engage in any business or contractual relations with either TSG or Stander in the future. Such acts were done with the intent to unfairly bolster and promote the BBC Group's own upcoming DWTS Tour and gain an unfair competitive advantage over Cross-complainants who had already booked and scheduled their BWAT Winter Tour.

25. As a direct and proximate result of Counter-defendants' wrongful and intentional interference with Counter-complainants' existing contractual relationships, such relationships have been and are continuing to be disrupted on an ongoing basis, causing loss of shows and performances in the BWAT Winter Tour, loss of profits, loss of reputation, and other monetary damages in an amount not yet ascertained, but according to proof at time of trial.

26. The BBC Group was further unjustly enriched by the profits received, or to be received, from the promotion and performances of the BWAT Dancers in the DWTS Tour, which would not have occurred but for Counter-defendants' wrongful actions herein.

27. The above-referenced conduct by Counter-defendants, and each of them, was intentional, malicious, fraudulent and oppressive, thereby justifying an award of punitive and exemplary damages according to proof at time of trial.

///
///
///

## SECOND COUNTER-CLAIM FOR RELIEF

(Intentional Interference with Prospective Economic Relations)

28. Stander & Group hereby repeat and reallege each and every allegation contained in the above paragraphs as though set forth in full hereat.

29. Stander & Group and the BWAT Dancers were in an economic relationship that would have likely resulted in an economic benefit, including further continuity, and performance in additional live shows and dance tours. Stander & Group were also in an economic relationship with other and past DWTS dancers, who had in the past been under contract with TSG to perform in live dance shows and tours.

30. At all times material hereto, Stander & Group had a long history, and good standing and reputation in the live theatrical show industry on a national scale throughout the United States. Stander & Group had developed various economic relationships, both pending and prospective, with various members in the theatrical show industry, including, but not limited to, performing centers and venues, agents, producers, promoters, dancers, singers, choreographers, and members of the media, on an individual and company/corporate level. These relationships held probable future economic benefits for Cross-complainants because they had continued for a substantial period of time, were constantly promoted and nurtured, and would have continued in the future absent Counter-defendants' wrongful interference.

31. At all times material hereto, The BBC Group knew of Stander & Group's economic and special business relationships with others in the theatrical industry, as further identified in Paragraph 30 above, including the good will that was developed over the years with TSG's entire client base that crossed over state lines. Despite knowing of these relationships, The BBC Group nevertheless intended to disrupt such relationships by, among other things, putting out press releases and advising members within the theatrical industry that Cross-complainants' have "stolen" DWTS' dancers, using social media sites and various entertainment media outlets to do the same, misrepresenting to the public and members within the theatrical industry that BWAT

was an unauthorized copy of the DWTS television show, advising and inducing the BWAT Dancers to breach their contracts with TSG, committing trade libel by slandering and defaming Stander & Group' good character and reputation in the theatre industry, engaging in unlawful and unfair business practices in violation of California state law by, among other things, promoting its upcoming DWTS Tour utilizing the very same BWAT Dancers who were already under contract to perform for TSG in their BWAT Winter Tour. Such instances of wrongful conduct represent separate and distinct independent acts in relation to Counter-defendants' interference with Counter-complainants' prospective economic relations and advantage.

32. The BBC Group was also unjustly enriched by the profits received, or to be received, from the promotion and performances of the BWAT Dancers in the DWTS Tour, which would not have occurred but for the Counter-defendants' wrongful actions herein.

33. As a direct and proximate result of Counter-defendants' wrongful interference with Counter-complainants' prospective economic relations and advantage as stated herein, such relationships have been and are continuing to be disrupted on an ongoing basis, causing, among other damages, loss of reputation and monetary damages in an amount not yet ascertained, and according to proof at time of trial.

34. The above-referenced conduct by Counter-defendants, and each of them, was intentional, malicious, fraudulent and oppressive, thereby justifying an award of punitive and exemplary damages according to proof at time of trial.

### THIRD COUNTER-CLAIM FOR RELIEF
(Inducing Breach of Contract)

35. Stander & Group hereby repeat and reallege each and every allegation contained in the above paragraphs as though set forth in full hereat.

36. At all times material hereto, Stander & Group and each of the BWAT Dancers entered into a written performance agreement for the BWAT Dancers to perform in the upcoming BWAT Winter Tour in January and February of 2015.

37. These written performance agreements were in full force and effect during the relevant times stated herein.

38. At all times material hereto, The BBC Group knew of such written performance agreements between the TSG and the BWAT Dancers, but nevertheless intended to cause, and did induce, instruct, and cause, the BWAT Dancers to breach their respective contracts with TSG, and forbid them to perform in the BWAT Winter Tour for which the BWAT Dancers had already contracted for.

39. As a direct and proximate result of Counter-defendants' wrongful conduct, TSG has been denied the full benefit of its performance contract with each of the BWAT Dancers, thereby resulting in the cancellation of shows by venues which TSG was under contract for in the upcoming BWAT Winter Tour, and causing the exclusive nature and value of the BWAT show production to be greatly diminished, all causing such other and further harm and monetary damages to Stander & Group in an amount not yet ascertained, but according to proof at time of trial.

40. The above-referenced conduct by Counter-defendants, and each of them, was intentional, malicious, fraudulent and oppressive, thereby justifying an award of punitive and exemplary damages according to proof at time of trial.

## FOURTH COUNTER-CLAIM FOR RELIEF

(Unfair Business Practices in Violation of California

Business & Professions Code Sec. 17200, et seq.)

41. Stander & Group hereby repeat and reallege each and every allegation contained in the above paragraphs as though set forth in full hereat.

42. At all times herein mentioned Plaintiffs engaged in conduct constituting unfair competition and fraudulent business practices as defined by California Business and Professions Code Sec. 17200 et seq. in the following respects among others:

    a) Interfering and disrupting Cross-complainants' business relationships with the BWAT Dancers, in addition to other DWTS dancers who had previously performed for TSG in numerous live BWAT shows and productions;

    b) Making false accusations and derogatory representations to theatrical industry members and the public at large that Stander & Group had "stolen" dancers from DWTS, were intentionally and unfairly infringing upon trademarks allegedly held by DWTS, all of which cast Stander & Group in a bad light, and tarnishing their good reputation built up over the years in the theatre industry;

    c) Interfering with Stander & Group's existing and prospective economic relations with members in the theatrical industry, causing various performing centers and other venues to cancel their shows with TSG (with an inherent unwillingness to contract for any future shows as they had done in the past), and otherwise tarnishing Stander & Group's good reputation in the theatrical industry at large; and,

    d) Unfairly competing with TSG in a similar live dance show tour, within the very same time frame as the BWAT Winter Tour, and inducing the BWAT Dancers under contract with TSG to perform in their own upcoming DWTS Tour instead.

43. The aforementioned acts by Counter-defendants, and each of them, constitute certain unfair, deceptive, and fraudulent business practices, and were all done with the intent to take advantage over Stander & Group and bolster its own upcoming DWTS Tour at Stander & Group's expense. Counter-defendants' motives were and are to rid and squash Stander & Group as a competitor in the live dance performance arena and unfairly promote their own live production show that was only developed years after the BWAT shows had been created and were in existence. Such conduct is contrary to the public policy of the State of California, and, in the alternative do also constitute unfair competition under California common law both against TSG, and other similar

like live dance performance productions and unfairly limits professional dancers from seeking gainful work and competing in a fair manner.

44. As a direct and proximate result of the aforementioned acts of Counter-defendants, and each of them, Counter-complainants have suffered and continue to suffer damages, all of which warrant minimum monetary restitution and a disgorgement of profits from Counter- Defendants , in an amount not yet ascertained, and according to proof at time of trial. Counter-complainants seek an appropriate order of this Court requiring Cross-defendants to make restitution by restoring to Counter-complainants all of the monies misappropriated, converted, lost, or diverted by Counter-defendants, and to disgorge all of the profits derived by them through the use of the unlawful and unfair business practices described above, including any further and appropriate injunctive relief.

## **FIFTH COUNTER-CLAIM FOR RELIEF**

(For Trade Libel against all Counter-Defendants)

45. Stander & Group hereby repeat and reallege each and every allegation contained in the above paragraphs as though set forth in full hereat.

46. Commencing in or around June of 2014, and continuing thereafter, Counter-defendants, and each of them, willfully, without justification, and without privilege, communicated, or caused to be communicated, to various news media outlets, the general public, and to numerous persons within the dance, theatrical, and entertainment industries (including those having long standing contractual relations with Counter-complainants), disparaging and derogatory statements relating to Counter-complainants' business practices, goodwill, ethics, and professional standing in the theatrical industry. Such statements include, but are not limited, to:

    A. *"Stander & Group have stolen DWTS dancers"*;

    B. *"The BWAT show is a fake copy-cat of DWTS"*;

LAW OFFICES OF PETER J. BABOS
3731 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(310) 248-4822

C. *"Scott Stander is a 'fraud' and a 'cheat' who advised and induced the DWTS dancers to breach their contracts with DWTS";*

These disparaging and defamatory statements, in addition to other comments and statement similarly made and communicated to third persons within the same context, cast Counter-complainants in a bad light and immediately adversely affected the reputation of Stander & Group.

47. Counter- Defendants' statements as stated above have disparaged Stander & Group as producers and promoters of the BWAT show, as well as other live theatrical shows produced by Stander & Group in live theater markets, in that it impeded their reputation and name already built up over many years in the theatrical industry, and especially with regard to Stander & Group's production and performance of BWAT over several years running on a national scale level.

48. All of Counter-Defendants' disparaging and defamatory statements were, and continue to be, false, and at all times herein Counter-defendants have known them to be false. Counter-Defendants knew that BWAT had been running in production for several years prior, and that Stander & Group was utilizing the DWTS dancers. Yet, DWTS had never objected or disapproved of these shows in the past several years. Such disparaging and defamatory statements, as known to be false by Counter-Defendants, were further made with the intent to humiliate and denounce Stander & Group in order to enhance and bolster the promotion and sale of their own upcoming DWTS Tour, and dissuade venues and theaters from booking any further and future BWAT shows , thereby eliminating them as any possible competition to Counter-defendants.

49. As a direct and proximate result of said disparaging remarks and statements made by Counter-defendants, and each of them, prospective and existing customers have ceased doing business with TSG, and have been deterred from doing further business and contracting with Counter-complainants. Accordingly, Counter-complainants have suffered injury to its business, including pecuniary and special damages, including but

not limited to, established sales for the BWAT Winter Tour compared to average previous years, direct sales loss and venue cancellations subsequent to the libelous publications made to others, all of which directly resulted from such libelous and defamatory publications and remarks made to others, without which Cross-complainants would have suffered no harm. Such general and special damages have not yet been ascertained, but are believed to be in excess of $250,000, and according to proof at time of trial.

50. In doing the acts alleged herein, Counter-defendants, and each of them, acted with fraudulent intent, malice, oppression, and in conscious disregard of Counter-complainants' known rights. By reason of such conduct, Counter-complainants are entitled to an award of punitive and exemplary damages according to proof at time of trial.

## PRAYER FOR RELIEF

WHEREFORE, these answering Defendants pray for judgment as follows:

1. That the Court enjoin The BBC Group, and all those acting in concert with it, from inducing the breach of, or otherwise interfering with, the contractual relationships or prospective economic relationship between Counter-claimants and the BWAT Dancers, any and all other dancers who have contracted with TSG, or performed in any BWAT show, and any venues and theaters in which TSG conducts business with;

2. That Stander & Group be awarded compensatory damages under California law in an amount adequate to compensate Stander & Group for all harm caused by The BBC Group, and to prevent the unjust enrichment of The BBC Group;

3. For special damages according to proof on the Fifth Counter Claim for Trade Libel;

    4.      That Stander & Group be awarded punitive and exemplary damages that are deemed proper to punish The BBC Group for its wrongful conduct in an amount to be determined by the Court;

    5.      For reasonable attorney's fees incurred herein to the extent permitted by law;

    6.      For costs of suit incurred herein; and,

    7.      For such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: February 17, 2015.    **LAW OFFICES OF PETER J. BABOS**

By: */s/ Peter J. Babos*
PETER J. BABOS, ESQ.
Attorneys for Defendants
and Counter-Claimants

## DEMAND FOR JURY TRIAL

Counter-Claimants respectfully request a jury trial on all issues and claims.

Respectfully submitted,

Dated: February 17, 2015.    **LAW OFFICES OF PETER J. BABOS**

By: */s/ Peter J. Babos*
PETER J. BABOS, ESQ.
Attorneys for Defendants
and Counter-Claimants